UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIMMY AVILA,

                    Plaintiff,

        -against-

ACACIA NETWORK, INC.; TREVOR
GRIFFITHS, Program Director, PMP; AJA
DOUGLAS, Quality Assurance Director; NEW
YORK CITY FIELD OFFICE OF MENTAL
HEALTH; KIM F. BEN-ATAR, Deputy Director
of Housing; NYC ADULT PROTECTIVE
SERVICES; THOMAS GLENOY, APS Senior
Supervisor; 1412 COLLEGE AVENUE LLC,

                    Defendants.

1:24-CV-0884 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

        Plaintiff Jimmy Avila, of the Bronx, New York, who is proceeding *pro se*, filed this

action asserting claims of disability-based discrimination, as well as claims of retaliation, under

the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"); claims of

constitutional violations under 42 U.S.C. § 1983; and claims under state law, seeking damages

and injunctive relief. Plaintiff sues: (1) Acacia Network, Inc. ("Acacia"), which may be

Plaintiff's apartment sublessor; (2) Trevor Griffiths, whom Plaintiff describes as "Program

Director, PMP"; (3) Aja Douglas, who appears to be Acacia's Director of Quality Assurance of

Supportive Housing; (4) the "New York City Field Office of Mental Health," which the Court

understands to be the New York State Office of Mental Health ("NYSOMH"); (5) "Kim F. Ben-

Atar," who appears to be Kim Benatar, Deputy Director of Housing at the NYSOMH; (6)"NYC

Adult Protective Service," which the Court understands to be the Adult Protective Services

Program ("APS"), a program of the New York City Department of Social Services' Human

Resources Administration ("HRA"); (7) Thomas Glenoy, whom Plaintiff describes as an "APS

Senior Supervisor," and (8) 1412 College Avenue, LLC, which may be the owner of the apartment building where Plaintiff resides.

By order dated February 8, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the following reasons, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that

the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

While Plaintiff does not specify whether he suffers from a disability, he has attached to his complaint a copy of a letter, dated June 2, 2023, issued by Hasnian Afza, M.D., a psychiatrist employed by NYC Health + Hospitals, which states that Plaintiff "has been diagnosed with Schizoaffective disorder, bipolar type," and that he "is at risk of relapse, psychiatric decompensation and potential rehospitalization without stable housing and financial resources." (ECF 1, at 30.) In that letter, Dr. Afza "strongly recommend[s] that [Plaintiff] receive supporting housing and eligible financial disability benefits." (*Id.*)

Plaintiff alleges the following: On January 3, 2024, "Plaintiff entered into a lease and relocation agreement with [Basics, Inc.]"[1] (ECF 1, at 3.) "Upon thorough review and

---

[1] Basics, Inc., also known as Bronx Addiction Services Integrated Concept System, Inc., appears to be a subdivision of, or is affiliated with, Acacia. In his complaint's statement of claim, Plaintiff does not specify the name of the defendant with whom he entered into a lease and a relocation agreement. He has attached to his complaint, however, a copy of an excerpt from a relocation agreement and one-year sublease agreement in which he appears to agree to end his lease or sublease with Basics, Inc., as to his previous apartment, and enter into another sublease with Basics, Inc., as to his current apartment. (ECF 1, at 17-23.) He has also attached a sublease agreement for his current apartment that is written on Acacia letterhead and that, while acknowledging that his apartment building is owned by "1412 College Avenue COL, LLC," treats Basics, Inc., as his landlord. (*Id.* at 25-26.) According to that sublease agreement, Plaintiff's apartment building "contains certain units to be used as residential dwellings for participants of the Basics Supportive Housing Program, a rental assistance program that is

consultation with legal counsel, it was brought to . . . Plaintiff's attention that several clauses

within the aforementioned agreement violate . . . Plaintiff's tenant rights and the [ADA]." (*Id.*)

"[T]here is a provision within the lease which states that . . . Plaintiff 'refuses social services'[2][;]

[it] is inaccurate and constitutes a misrepresentation of . . . Plaintiff's intentions as a person

protected by the [ADA.]" (*Id.*) This is because "Plaintiff is entitled to reasonable

accommodations[,] including the provision of social services when deemed necessary by . . .

Plaintiff's healthcare providers." (*Id.*) Plaintiff states that, "[b]y including this false statement in

the lease, Acacia . . . is effectively prohibiting . . . [him] from accessing the support and services

that are essential to . . . [his] well-being." (*Id.*) In addition, "Plaintiff believes . . . that the

circumstances under which the lease was presented and signed amount to duress as . . . [he] was

compelled to agree to the terms and conditions that restrict . . . [his] tenant rights and ignore the

recommendations of . . .[his] healthcare professionals."[3] (*Id.* at 3-4.) Because of that, Plaintiff

believes "that the lease agreement is invalid and unenforceable due to the conditions under which

it was executed." (*Id.* at 4.) Accordingly, "Plaintiff demands that the lease and relocation

agreement be revised to accurately reflect . . . [his] rights and entitlement to reasonable

---

administered by the [NYSOMH] and Promesa Inc.," and that Basics, Inc. "has control of, and is
legally entitled to make available . . . certain units in the building." (*Id.* at 25.)

[2] Attached to Plaintiff's complaint is an email, dated January 3, 2024, from Aja Douglas,
alleged to be Acacia's Director of Quality Assurance of Supportive Housing, to Plaintiff, in
which Douglas attaches a copy of the excerpt of the abovementioned relocation agreement and
one-year sublease agreement. (ECF 1, at 17-23.) Douglas's email advises Plaintiff "that the
agency will not be providing any social service[s] and that [it] will just be providing a tenant-
based subsidy." (*Id.* at 17.) The relocation agreement excerpt itself also states that Plaintiff "is
refusing social services and will solely be part of the program on a rent basis." (*Id.* at 21.)

[3] The relocation agreement excerpt states, however, that "[e]ach of the parties
acknowledge that this Agreement is a fair and reasonable Agreement, and is not the result of the
any fraud, duress, coercion, pressure, harassment, or undue influence exercised by either party."
(ECF 1, at 23.)

accommodations under the [ADA] as well as any and all other relief deemed necessary and applicable." (*Id.*)

Plaintiff alleges that, in addition to discriminating against him, Defendants retaliated against him "for succeeding in a previous legal action for violations of these laws and obligations[,] which prompted [them] to specifically include these discriminatory terms and conditions in the subsequent agreement . . . [and] to wrongfully call[] [APS] and report[] . . . Plaintiff to [APS]."[4] (*Id.* at 5-6.) He also alleges that "[t]he APS Defendants[,] while acting under the color of law[,] came to [his] home . . . and were asked to leave numerous times by . . . [him]; . . . [he] protested the misconduct of the APS Defendants by exposing their misconduct on various platforms[,] including You[T]ube."[5] (*Id.* at 10.) Plaintiff further alleges that his actions "prompted the APS Defendants to take retaliatory action against . . . [him] by attempting to wrongfully hospitalize . . . [him]." (*Id.*)

In addition to the injunctive relief mentioned above, Plaintiff seeks damages and a trial by jury.[6]

---

[4] Plaintiff has also attached to his complaint a copy of a July 21, 2021 stipulation of settlement of an action brought by him against Basics, Inc., in the Civil Court of the City of New Yor, Bronx County, Housing Part, regarding his previous apartment and visits by Basics, Inc., personnel to that apartment. (ECF 1, at 13-15.)

[5] Plaintiff has further attached to his complaint a copy of a February 2, 2024 email that he sent to members of the New York City Police Department ("NYPD") and others, including other New York City and New York State-agency officials, in which he asserts that, one day previous, on February 1, 2024, "[a] false police report was made . . . by [an] [u]nknown individual accompanied by APS-Ms. Ajayi and unknown 2 males came without [n]otice in which [they were] required to do by law." (ECF 1, at 33.)

[6] In the relocation agreement excerpt, however, the parties (Plaintiff and Basics, Inc.) agreed to waive damages and a trial by jury:

in any action, proceeding or counterclaim brought by either of such parties against the other with respect to any matter whatsoever arising out of or in any way connected with [that] agreement, the relationship of Owner and Occupant, Occupant's use or occupancy of the apartment, or the enforcement of any remedy

**DISCUSSION**

The Court understands that Plaintiff is asserting: (1) claims of disability-based discrimination, as well as claims of retaliation, against Acacia and 1412 College Avenue, LLC, and against any individual defendants employed by Acacia and 1412 College Avenue, LLC, including Douglas and, possibly, Griffiths, under the FHA; (2) claims of disability-based discrimination, as well as claims of retaliation, against Acacia, 1412 College Avenue, LLC, the NYSOMH, and APS, under the Rehabilitation Act; (3) claims of disability-based discrimination, as well as claims of retaliation, against the NYSOMH and APS, under Title II of the ADA; (5) claims of federal constitutional violations against Benatar, APS, and Glenoy under 42 U.S.C. § 1983; and (6) claims against all of the defendants under state law.

**A.     Overlap with previously-filed cases: *Avila v. Acacia Network, Inc.*, 1:23-CV-7834 (LTS), and *Avila v. Acacia Network*, 1:23-CV-10260 (LTS)**

Before Plaintiff filed the present *pro se* action on February 2, 2024, he filed other *pro se* actions in this court. On September 1, 2023, he filed a *pro se* action against Acacia and Griffiths; that action, known as *Avila v. Acacia Network, Inc.*, 1:23-CV-7834 (LTS) ("*Avila I*"), is pending before the Court. On November 21, 2023, Plaintiff filed another *pro se* action against: (1) Acacia; (2) Douglas; (3) the entity that apparently owns Plaintiff's previous apartment building, 1212 Grant Realty LLC; (4) Manny Stein; and (5) the Director of the NYSOMH's New

---

whether pursuant to statute, in contract or tort, and irrespective of the nature or basis of the claim. . . . No damages shall be awarded and Occupant hereby waives any claim for damages . . . in any action or proceeding (whether judicial or an arbitration) relating to Owner's withholding, delaying or conditioning any consent or approval or the reasonableness of any such withholding, delay or condition.

(ECF 1, at 22-23.)

York City Field Office, Caren Abate; that action, known as *Avila v. v. Acacia Network*, 1:23-CV-10260 (LTS) ("*Avila II*"), is also pending before the Court.

Even granting Plaintiff's present complaint the liberal construction that is due, Plaintiff seems to be reasserting claims in the present action against Acacia, Douglas, and Griffiths that he has asserted in *Avila I* and *Avila II*. For this reason, the Court dismisses, without prejudice, any claims against Acacia, Douglas, and Griffiths that Plaintiff is asserting in this action that he is also asserting in *Avila I* and *Avila II*. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit. . . . Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly[,] [among other things,] . . . dismiss it without prejudice. . . ."); *see also Mackey v. Bd. of Educ. for the Arlington Cent. Sch. Dist.*, 112 F. App'x 89, 91 (2d Cir. 2004) (summary order) (citing *Curtis*, 226 F.3d at 138, and affirming the district court's dismissal without prejudice of those claims within an action that were duplicative of claims in another pending action, while the district court adjudicated other claims).

## B.     Claims under the FHA

### 1.     Claims of discrimination under the FHA against Acacia, 1412 College Avenue LLC, Douglas, and Griffiths

The FHA "broadly prohibits discrimination in housing." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Among other things, it prohibits the "refus[al] to sell or rent after the making of a bona fide offer, . . . [and the] refus[al] to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion,

sex, familial status, . . . national origin," or disability.[7] 42 U.S.C. § 3604(a), (f)(1). It also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, . . . national origin," or disability. § 3604(b), (f)(2).

Generally, to state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that he is "'a member of a protected class,' suffered relevant 'adverse' treatment, and '. . . [he must sustain] a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original, footnote omitted)). "'[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." *Id.* at 45-46 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Thus, "a plaintiff may not need to prove that [his] protected status was a but-for cause of the adverse action [he] suffered, but only a motivating factor." *Id.* at 46 (citing, *inter alia*, *Vega*, 801 F.3d at 86); *see, e.g.*, *Sykes v. NYC Hous. Auth.*, No. 1:22-CV-2127 (MKV), 2022 WL 875902, at *2 (S.D.N.Y. Mar. 24, 2022). "Aggrieved persons have long been permitted to assert [FHA] claims against individual defendants who engaged in affirmative acts of discrimination or enforced a corporation's discriminatory rules or policies." *Andujar v. Hewitt*, No. 02-CV-2223 (SAS), 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002) (collecting cases).

---

[7] "To demonstrate a disability under the FHA, a plaintiff must show: (1) 'a physical or mental impairment which substantially limits one or more . . . major life activities'; (2) 'a record of having such an impairment'; or (3) that he or she is 'regarded as having such an impairment.'" *See Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015) (quoting 42 U.S.C. § 3602(h)).

The Court assumes, for the purposes of this order, that Plaintiff has a disability, as defined by the FHA. He alleges no facts, however, showing that his disability was at least a motivating factor with regard to his allegations of discrimination by Acacia, 1412 College Avenue LLC, Douglas, or Griffiths, including any regarding his entrance into a renewal agreement and/or sublease that appears to have specifically stated, and to which he seems to have agreed, that neither Acacia nor its employees would provide him with any social services. Thus, Plaintiff has failed to state a claim of intentional discrimination under the FHA against Acacia, 1412 College Avenue LLC, Douglas, and Griffiths, and the Court dismisses those claims for that reason. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead his claims of discrimination under the FHA in an amended complaint in which he alleges facts sufficient to state such a claim.

### 2. Claims of retaliation under the FHA against Acacia, 1412 College Avenue LLC, Douglas, and Griffiths

The FHA also prohibits "coerc[ion], intimidat[ion], threat[s], or interfere[nce] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the antidiscrimination provisions of the FHA. 42 U.S.C. § 3617. To state a claim of retaliation under the FHA, a plaintiff must allege that a defendant:

> (1) . . . engaged in protected activity by opposing conduct prohibited under the FHA; (2) . . . [was] aware of that activity; (3) . . . subsequently took adverse action against [the] plaintiff[]; and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse action.

*Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005), *aff'd*, 212 F. App'x 38 (2d Cir. 2007) (summary order). "Protected activity under the FHA refers to action taken to protest

or oppose statutorily prohibited discrimination, *i.e.*, retaliating because a person made a complaint, testified, assisted, or participated in any manner in a proceeding under the FHA." *Paladino v. Beaumont*, No. 20-CV-0065, 2023 WL 9469277, at \*4 (W.D.N.Y. Sept. 1, 2023), *report & recommendation adopted*, 2024 WL 343308 (W.D.N.Y. Jan. 29, 2024). "[F]or purposes of retaliation, an adverse action is any action that would be sufficiently severe to deter a reasonable person in the plaintiff's position from participating in a protected activity." *Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289 (JGK), 2023 WL 1966120, at \*10 (S.D.N.Y. Feb. 13, 2023). A plaintiff can show a causal connection: "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow [individuals] who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Id.* at \*9 (S.D.N.Y. Feb. 13, 2023) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (alteration in original)). As with claims of discrimination under the FHA, claims of retaliation under the FHA allow for individual liability. *See Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289 (JGK), 2019 WL 1244494, at \*5 (S.D.N.Y. Mar. 18, 2019); *Ponce v. 480 E. 21st Street, LLC*, No. 12-CV-4828, 2013 WL 4543622, at \*4 (E.D.N.Y. Aug. 28, 2013).

Plaintiff seems to allege that Acacia, 1412 College Avenue LLC, Douglas, and/or Griffiths retaliated against him for bringing a previous lawsuit against Acacia and/or, perhaps, those other defendants. While it is unclear whether Plaintiff is referring to *Avila I*, *Avila II*, and/or his abovementioned state-court litigation, the Court assumes, for the purposes of this order, that Plaintiff engaged in protected activity, and that Acacia, 1412 College Avenue LLC, Douglas, and Griffiths were aware of that activity. It is unclear from Plaintiff's allegations, however, that Acacia, 1412 College Avenue LLC, Douglas, and/or Griffiths took adverse action

10

against Plaintiff, by either refusing to provide social services to Plaintiff after he expressly

agreed not to receive them, or by reporting Plaintiff to APS. Even if such acts are considered to

be adverse actions under the FHA, Plaintiff has not alleged facts sufficient to show that there was

a causal connection between his protected activity and those adverse action(s). Thus, the Court

dismisses, for failure to state a claim on which relief may be granted, Plaintiff's claims of

retaliation under the FHA. *See* § 1915(e)(2)(B)(ii).

The Court, however, grants Plaintiff leave to replead such claims in an amended

complaint in which he alleges facts sufficient to state such a claim.

### C.      Claims under the Rehabilitation Act

#### 1.      Claims of discrimination under the Rehabilitation Act against Acacia, the NYSOMH, APS, and 1412 College Avenue LLC

Plaintiff may also be asserting claims of discrimination under the Rehabilitation Act

against Acacia, the NYSOMH, APS, and 1412 College Avenue LLC. Under this statute:

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).[8]

To state a claim under the Rehabilitation Act, the plaintiff must allege that: (1) the

plaintiff is a qualified individual with a disability; (2) the defendant is subject to the

Rehabilitation Act; and (3) the plaintiff was denied the opportunity to participate in or benefit

---

[8] For the purposes of the Rehabilitation Act, the term "individual with a disability" incorporates by reference the definition of "disability" in the ADA. 29 U.S.C. § 705(20)(B). Under the ADA, and like under the FHA, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).

from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability.[9] *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (quoting *Henrietta D v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). To show that the defendant is subject to the Rehabilitation Act, "a plaintiff must show that the defendant[ ] [is either a federal executive agency, the United States Postal Service ("USPS"), or] receive[s] federal funding." *Henrietta D.*, 331 F.3d at 272; *see* § 794(a).

Plaintiff alleges no facts showing that Acacia or 1412 College Avenue LLC, which both appear to be private entities; the NYSOMH, a New York State agency[10]; or APS, a New York City agency;[11] receives federal funding. Even if any of those defendants has received federal

---

[9] Following the ruling of the Supreme Court of the United States in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009), in which the court held that "age discrimination must be the 'but-for' cause of an adverse employment action for . . . liability to attach" under the Age Discrimination in Employment Act of 1967 (ADEA), the United States Court of Appeals for the Second Circuit has not decided whether "but-for" causation or "mixed motive" causation is required to state a non-employment discrimination claim under the Rehabilitation Act or Title II of the ADA. *Bolmer v. Oliveira*, 594 F.3d 134, 148-49 (2d Cir. 2010) (discussion in the context of Title II of the ADA); *see Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (standards under Title II of the ADA and the Rehabilitation Act "are generally the same"). *But cf. Natofsky*, 921 F.3d at 345 (2d Cir. 2019) (holding that "but-for" causation applies to employment discrimination claims brought under the Rehabilitation Act).

[10] The requirement that the NYSOMH receive federal funding is not only necessary in order to state a claim of discrimination against it under the Rehabilitation Act; it is also a requirement to show the State of New York's waiver of Eleventh Amendment immunity as to such claims. *Cf. Matagrano v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 9:19-CV-0763, 2020 WL 7338586, at *11 n.18 (N.D.N.Y. Dec. 14, 2020) ("New York's acceptance of federal funds on behalf of [the NYS]OMH . . . waives its Eleventh Amendment defense to Plaintiff's Rehabilitation Act claims against" that entity).

[11] The Court must dismiss Plaintiff's claims against APS because, as an agency of the City of New York, it is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Morris v. NYC HRA*, No. 13-CV-1845, 2013 WL 3148664, at *3 (E.D.N.Y. June 19, 2013) (HRA and APS); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.") The Court therefore dismisses Plaintiff's claims against APS for failure to state a claim on which relief may be granted, *see*

funding, however, Plaintiff's allegations are insufficient to show that any of those defendants denied him the opportunity to participate in or benefit from its services, programs, or activities, or has otherwise discriminated against him, by reason of his disability, especially when, at least as to Acacia, he appears to have specifically agreed not to receive such services. Thus, Plaintiff has failed to state a claim of discrimination under the Rehabilitation Act against Acacia, the NYSOMH, the City of New York, and 1412 College Avenue LLC, and the Court dismisses those claims against those defendants for that reason. *See* § 1915(e)(2)(B)(ii).

The Court, however, grants Plaintiff leave to file an amended complaint in which he alleges facts sufficient to state a claim of discrimination against Acacia, the NYSOMH, the City of New York, or 1412 College Avenue LLC under the Rehabilitation Act.

### 2.   Claims of retaliation under the Rehabilitation Act against Acacia, the NYSOMH, the City of New York, and 1412 College Avenue LLC

To the extent that Plaintiff asserts claims of retaliation under the Rehabilitation Act against Acacia, the NYSOMH, the City of New York, and 1412 College Avenue LLC, the Court must dismiss those claims. To state such a claim, a plaintiff must allege, similar to a claim of retaliation under the FHA, that: "(i) [the] plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (internal quotation marks and citation omitted). In this context, "[w]ith respect to causation, a plaintiff must prove 'that "but for" the disability, the adverse action would not have been taken.'" *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky*, 921 F.3d at 347). In addition, as

§ 1915(e)(2)(B)(ii), but construes Plaintiff's claims against APS as brought against the City of New York.

with a discrimination claim brought under this statute, the plaintiff must show that the defendant is either a federal executive agency or the USPS, or receives federal funding. *Daly v. Westchester Cnty. Bd. Of Legislators*, No. 19-CV-4642 (PMH), 2023 WL 4896801, at *4, 7-8 (S.D.N.Y. Aug. 1, 2023), *appeal pending*, No. 23-1220 (2d Cir.); *see* § 794(a).

Even assuming that Acacia, the NYSOMH, the City of New York, and 1412 College Avenue LLC receive federal funding; that Plaintiff engaged activity protected by the Rehabilitation Act; and that these defendants were aware of this activity; for the reasons discussed above as to Plaintiff's claims of retaliation under the FHA, the Court concludes that Plaintiff does not allege facts sufficient to show that he suffered an adverse action by any of these defendants and that there was a causal connection between the adverse action and the protected activity. The Court therefore dismisses Plaintiff's these claims of retaliation under the Rehabilitation Act for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but grants Plaintiff leave to replead these claims against these defendants in an amended complaint in which he alleges facts sufficient to state such a claim.

**D.      Claims under Title II of the ADA**

**1.      Claims of discrimination under Title II of the ADA against the NYSOMH and the City of New York**

Title II of the ADA forbids discrimination against persons with disabilities in, among other areas of public life, public services, programs, and activities. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[12]

---

[12] Under the ADA, a "public entity" includes "(A) any State or local government; [and] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)-(B). The NYSOMH, APS, and the City of New

42 U.S.C. § 12132. The standard to state a claim of discrimination under Title II of the ADA is the same as the standard to state a claim of discrimination under the Rehabilitation Act, though without the additional requirement that the defendant must be a federal executive agency or the USPS, or receive federal funding. *See Shomo*, 579 F.3d at 185; *Henrietta D.*, 331 F.3d at 272. For the reasons discussed above as to Plaintiff's claims of discrimination under the Rehabilitation Act against the NYSOMH and the City of New York, the Court dismisses Plaintiff's claims of discrimination under Title II of the ADA against these defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). As above, the Court grants Plaintiff leave to replead these claims in an amended complaint in which he alleges facts sufficient to state such a claim against these defendants.[13]

## 2.    Claims of retaliation under the ADA against the NYSOMH and the City of New York

The Court must dismiss Plaintiff's claims of retaliation under the ADA against the NYSOMH and the City of New York. The ADA's antiretaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful [under the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). The pleading requirements for a claim of retaliation under the

---

York are public entities for the purposes of the ADA. *See id.*; *Anthony v. City of New York*, 339 F.3d 129, 141 n.8 (2d Cir. 2003) (City of New York); *Matagrano*, 2020 WL 7338586, at *12 (OMH).

[13] "[I]f a plaintiff cannot state a Title II [ADA] claim [against a state agency], the court's [Eleventh Amendment] sovereign immunity inquiry is at an end." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013). Thus, if Plaintiff fails to state a claim of discrimination against the NYSOMH, it appears that such a claim is also precluded by Eleventh Amendment sovereign immunity. *See id.* (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

ADA are the same as those for claims of retaliation under the FHA and the Rehabilitation Act (without the requirement that the defendant be a federal executive agency or the USPS, or receive federal funding). *See Tafolla*, 80 F.4th at 125-26; *Natofsky*, 921 F.3d at 353; *Currytto v. Doe*, No. 3:18-CV-1392, 2019 WL 2062432, at *8 (D. Conn. May 9, 2019) ("The same standards apply to a claim of retaliation under . . . the Rehabilitation Act as under the ADA." (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002))). For the same reasons that the Court dismissed Plaintiff's claims of retaliation under the FHA and the Rehabilitation Act, the Court dismisses Plaintiff's ADA claims of retaliation against the NYSOMH[14] and the City of New York, for failure to state a claim on relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims against these defendants in an amended complaint in which he alleges facts sufficient to state a such a claim against these defendants.

**E.    Claims of federal constitutional violations under 42 U.S.C. § 1983 against the City of New York, Benatar, and Glenoy**

**1.    The City of New York**

As discussed above, the Court construes Plaintiff's claims of federal constitutional violations brought under 42 U.S.C. § 1983 against APS as brought against the City of New York. *See supra* note 11. When a plaintiff sues a municipality, like the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees

---

[14] "The law is not presently settled on the issue of whether Congress validly abrogated [Eleventh Amendment] sovereign immunity for retaliation claims under [the ADA] when such claims are predicated on . . . claims [under Title II of the ADA]." *Puccinelli v. S. Conn. State Univ.*, No. 3:21-CV-0763, 2023 WL 4838291, at *6 n.8 (D. Conn. July 28, 2023); *Constantine v. Merola*, No. 1:20-CV-1012, 2020 WL 8450544, at *5 n.8 (N.D.N.Y. Nov. 6, 2020), *report & recommendation adopted sub nom.*, *Constantine v. NYS Deaf Cmty.*, 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021).

or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and; (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York contributed to the violation of his federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against the City of New York for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but grants Plaintiff leave to replead these claims against the City of New York in an amended complaint.

### 2.     Benatar and Glenoy

To the extent that Plaintiff asserts claims under Section 1983 against Benatar, who appears to be the Deputy Director of Housing at the NYSOMH, and Glenoy, whom Plaintiff describes as an "APS Senior Supervisor," the Court must dismiss those claims. To state a claim under Section 1983 against individual state actors, such as Benatar and Glenoy, a plaintiff must allege facts showing that those individuals were directly and personally involved in an alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."
(internal quotation marks omitted)). An individual state actor defendant may not be held liable
under Section 1983 solely because that individual employs or supervises a person who violated
the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable
for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").
Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the
elements of the underlying constitutional violation directly against the official[.]" *Tangreti v.
Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not show how either Benatar or Glenoy was directly and personally
involved with the alleged violations of his federal constitutional rights.[15] The Court therefore
dismisses Plaintiff's claims under Section 1983 against Benatar and Glenoy, for failure to state a
claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants
Plaintiff leave to amend his complaint to name as defendants those individual state actors who
were directly and personally involved in the alleged violations of federal constitutional rights and
to allege facts showing how those individuals were each personally and directly involved in
those alleged violations.[16]

---

[15] Plaintiff alleges that "[t]he APS Defendants[,] while acting under the color of law[,]
came to [his] home . . . and were asked to leave numerous times by . . . [him]; . . . [he] protested
the misconduct of the APS Defendants by exposing their misconduct on various platforms[,]
including You[T]ube." (ECF 1, at 10.) He also alleges that his actions "prompted the APS
Defendants to take retaliatory action against . . . [him] by attempting to wrongfully hospitalize
. . . [him]." (*Id.*) Plaintiff has attached to his complaint a copy of a February 2, 2024 email that he
sent to members of the NYPD and others, including other New York City and New York State-
agency officials, in which he asserts that, one day previous, on February 1, 2024, "[a] false
police report was made . . . by [an] [u]nknown individual accompanied by APS-Ms. Ajayi and
unknown 2 males came without [n]otice in which [they were] required to do by law." (*Id.* at 33.)
As to the alleged actions of APS officials, however, Plaintiff alleges nothing about Glenoy.

[16] If Plaintiff does not know the name of an individual defendant, he may refer to that
individual as "John Doe" or "Jane Doe," with descriptive information, in both the caption and

### 3.      First Amendment retaliation

Plaintiff seems to allege that individual APS officials retaliated against him for posting his previous interactions with them on the internet, including on YouTube, by attempting to involuntarily hospitalize him. The Court understands such allegations as asserting First Amendment retaliation claims under Section 1983. To state such a claim, a private citizen must allege that: "(1) he has an interest protected by the First Amendment; (2) [the] defendants' actions were motivated or substantially caused by his exercise of that right; and (3) [the] defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) ("Regardless of the factual context, [courts] have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.").

The Court assumes, for the purposes of this order, that Plaintiff's alleged posting of his previous interactions with APS officials on YouTube and/or on other internet platforms is protected by the First Amendment. Plaintiff, who does not allege that he was actually hospitalized as result of the actions of APS officials, does not allege facts sufficient to show that any APS official's actions was motivated or was substantially caused by the abovementioned exercise of his First Amendment rights. In addition, Plaintiff does not allege facts showing that the APS officials' actions chilled the exercise of his abovementioned First Amendment rights. Accordingly, the Court dismisses these claims for failure to state a claim on which relief may be

the body of the amended complaint. The naming of "John Doe" or "Jane Doe" defendants, however, does not toll the three-year limitations period governing Plaintiff's claims under Section 1983, and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" or "Jane Doe" defendants and amending his complaint to include the identity of any "John Doe" or "Jane Doe" defendants before the applicable limitations period expires.

granted, *see* § 1915(e)(2)(B)(ii), but grants Plaintiff leave to file an amended complaint in which he alleges sufficient facts to state such a claim.

## F.    Claims under state law

A federal district court may decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed those of Plaintiff's claims of which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction of any of his claims under state law. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND GRANTED

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under the FHA, the

Rehabilitation Act, the ADA, or 42 U.S.C. § 1983, the Court grants Plaintiff 30 days' leave to file an amended complaint to detail those claims, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order. The Court, however, grants Plaintiff 30 days' leave to file an amended complaint, as specified in this order. If Plaintiff files an amended complaint within the time allowed, or fails to show cause as to such failure, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

 Dated:   April 15, 2024
            New York, New York

                                        /s/ Laura Taylor Swain
                                   LAURA TAYLOR SWAIN
                                   Chief United States District Judge