UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIMMY AVILA,

               Plaintiff,

         -against-

ACACIA NETWORK, INC; BASICS, INC.;
TREVOR GRIFFITHS, Program Director; AJA
DOUGLAS, Manager, PMP; JAMAR CROW,
Alleged Social Worker; CHARLES STATEN,
Alleged Social Worker; NYSOMH; KIM F.
BEN-ATAR, Deputy Director of Housing;
ADULT PROECTIVE SERVICES; THOMAS
GLENOY, APS Senior Supervisor; 1212
GRANT REALTY, LLC; 1412 COL LLC.,

               Defendants.

1:24-CV-0884 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

       By order dated April 15, 2024, the Court dismissed this *pro se* action, in which Plaintiff Jimmy Avila proceeds *in forma pauperis* ("IFP"), but granted him 30 days' leave to file an amended complaint, as specified in that order. (ECF 4.) On May 13, 2024, Plaintiff filed an amended complaint in response to that order; it is the operative pleading for this action. (ECF 5.)

       In his amended complaint, Plaintiff asserts claims under the Fair Housing Act ("FHA"), the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983. Named as defendants are: (1) Acacia Network, Inc. ("Acacia"), which Plaintiff describes as "a non-profit organization that may act as the sublessor of Plaintiff's apartment" and receives federal funding; (2) Basics, Inc. ("Basics"), which Plaintiff describes as also "a non-profit organization that may act as the sublessor of Plaintiff's apartment" and receives federal funding; (3) Trevor Griffiths, Acacia's Program Director of its "PMP" program; (4) Aja Douglas, Acacia's Quality Assurance Director of Supportive Housing; (5) Jamar Crow, "a Self-Described

Social Work[er] under the jurisdiction of . . . Aja Douglas"; (6) Charles Staten, "as Self-Described Social Work[er] under the jurisdiction of . . . Aja Douglas"; (7) the New York State Office of Mental Health ("NYSOMH"); (8) Kim F. Ben-Atar, NYSOMH's Deputy Director of Housing; (9) Adult Protective Services ("APS"), a program of the New York City Human Resources Administration ("HRA"); (10) Thomas Glenoy, an APS Senior Supervisor; (11) 1212 Grant Realty LLC, the owner of Plaintiff's previous apartment building located at 1212 Grant Avenue, Bronx, New York ("1212 Grant Avenue"); and (12) "1412 Col LLC," the owner of Plaintiff's current apartment building located at 1412 College Avenue, Bronx, New York ("1412 College Avenue").[1] (ECF 5, at 2-4) Plaintiff seeks declaratory relief, injunctive relief, and monetary damages.

For the following reasons, the Court dismisses this action.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

---

[1] Plaintiff appears to assert, in his amended complaint, claims against the individual defendants in their individual and official capacities. (ECF 5, at 4.) The Court understands that Plaintiff does so as to his claims against the individual state-actor defendants, which include Ben-Atar and Glenoy.

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

### A.    The Court's April 15, 2024 order

The Court, in its April 15, 2024 order, dismissed this action but granted Plaintiff 30 days' leave to replead his claims in an amended complaint, as specified in that order. (ECF 4.)

Because Plaintiff, in his original complaint, seemed to have been reasserting claims against Acacia, Douglas, and Griffiths that he has asserted in two of his other previously filed *pro se* actions that are pending in this court that are known as *Avila v. Acacia Network, Inc.*, 1:23-CV-7834 (PAE) (KHP) ("*Avila I*"), and *Avila Acacia Network*, 1:23-CV-10260 (PAE)

("*Avila II*"), the Court dismissed, without prejudice, "any claims against Acacia, Douglas, and Griffiths that Plaintiff is asserting in this action that he is also asserting in *Avila I* and *Avila II*." (*Id.* at 7.)

With respect to Plaintiff's claims of disability discrimination under the FHA against Acacia, 1412 College Avenue LLC,[2] Douglas, and Griffiths, the Court held that Plaintiff had alleged no facts in his original complaint "showing that his disability was at least a motivating factor with regard to his allegations of discrimination by" those defendants. (*Id.* at 9.) The Court thus dismissed, for failure to state a claim on which relief may be granted, Plaintiff's claims of intentional disability discrimination under the FHA against those defendants. (*Id.*) The Court, however, granted Plaintiff leave to replead those claims in an amended complaint in which he was to allege facts sufficient to state such a claim. (*Id.*)

The Court also dismissed, for failure to state a claim, but with leave to replead, Plaintiff's claims of retaliation under the FHA against those defendants arising from Plaintiff's bringing a previous lawsuit against Acacia and/or, perhaps, against those other defendants. (*Id.* at 9-11.)

As to Plaintiff's claims of disability discrimination under the Rehabilitation Act against Acacia, the NYSOMH, the APS (construed to be the City of New York), and 1412 College Avenue LLC, the Court held that Plaintiff had alleged no facts, in his original complaint, that those defendants receive federal funding and that, even if any of them did, "Plaintiff's allegations [were] insufficient to show that any of those defendants denied him the opportunity to participate in or benefit from its services, programs, or activities, or has otherwise discriminated against him, by reason of his disability." (*Id.* at 11-13.) Thus, the Court also dismissed those claims for

---

[2] The Court understands that Plaintiff's reference to "1412 COL LLC" in his amended complaint is a reference to 1412 College Avenue LLC.

failure to state a claim, but it granted Plaintiff leave to replead those claims against those defendants in amended complaint. (*Id.* at 13.)

The Court further dismissed, for failure to state a claim, Plaintiff's claims of retaliation under the Rehabilitation Act against those defendants, but granted Plaintiff leave to replead those claims against those defendants as well. (*Id.* at 13-14.)

The Court construed Plaintiff's claims of disability discrimination brought under the ADA as brought under Title II of the ADA against the NYSOMH and the City of New York. (*See id.* at 14-15.) Noting the virtually identical pleading standard for a claim of disability discrimination under the Rehabilitation Act and for such a claim under Title II of the ADA, the Court dismissed, for failure to state a claim, Plaintiff's claims of disability discrimination under Title II of the ADA against those defendants for the same reasons it dismissed Plaintiff's claims of disability discrimination under the Rehabilitation Act against those same defendants. (*Id.* at 15.) The Court, however, granted Plaintiff leave to replead his claims of disability discrimination under Title II of the ADA against those defendants. (*Id.*)

In addition, for the same reasons that the Court dismissed Plaintiff's claims of retaliation under the FHA and the Rehabilitation Act, it dismissed Plaintiff's claims of retaliation under the ADA against the NYSOHM and the City of New York, for failure to state a claim; the Court, however, granted Plaintiff leave to replead those claims against those defendants. (*Id.* at 15-16.)

The Court construed Plaintiff's claims under 42 U.S.C. § 1983 against APS as brought against the City of New York (*id.* at 16), and dismissed those claims, for failure to state a claim, because Plaintiff, in his original complaint, had alleged "no facts showing that a policy, custom, or practice of the City of New York contributed to the violation of his federal constitutional

rights" (*id.* at 17). The Court, however, granted Plaintiff leave to replead those claims against the City of New York. (*Id.*)

The Court also dismissed, for failure to state a claim, Plaintiff's claims under Section 1983 against Ben-Atar (referred to as "Benatar" in the Court's April 15, 2024 order) and Glenoy because Plaintiff had not shown, in his original compliant, "how either Benatar or Glenoy was directly and personally involved with the alleged violations of his federal constitutional rights." (*Id.*at 18.) The Court, however, granted Plaintiff "leave to amend his complaint to name as defendants those individual state actors who were directly and personally involved in the alleged violations of federal constitutional rights and to allege facts showing how those individuals were each personally and directly involved in those alleged violations." (*Id.*) (footnote omitted).

The Court construed Plaintiff's allegations "that individual APS officials retaliated against him for posting his previous interactions with them on the internet, including on YouTube, by attempting to involuntarily hospitalize him" as asserting claims of First Amendment retaliation under Section 1983. (*Id.* at 19.) Because Plaintiff failed to allege, in his original complaint, "facts sufficient to show that any APS official's actions was motivated or was substantially caused by [Plaintiff's] . . . exercise of his First Amendment rights" and "facts showing that the APS officials' actions chilled the exercise of [Plaintiff's] abovementioned First Amendment rights," the Court dismissed those claims for failure to state a claim. (*Id.*) The Court, however, granted Plaintiff leave to replead those claims. (*Id.* at 19-20.)

The Court declined to consider Plaintiff's claims under state law under its supplemental jurisdiction. (*See id.* at 20.)

**B.      Plaintiff's allegations in his amended complaint**

Plaintiff, in his amended complaint filed in response to the Court's April 15, 2024 order, specifically asserts claims under the FHA, the Rehabilitation Act, the ADA, and Section 1983,

arising from the alleged actions of the defendants named in the amended complaint that "have egregiously impacted his housing stability, personal liberty, and health." (ECF 5, at 1.) He alleges that he currently resides in the apartment building located at 1412 College Avenue. (*Id.* at 2.) Plaintiff also alleges that he "suffers from . . . schizoaffective disorder, bipolar type, along with other physical ailments including periodontal disease and stage 2 kidney disorder. These conditions substantially limit his major life activities and qualify him as disabled under the [FHA], the [ADA], and other pertinent statutes." (*Id.*)

Plaintiff further alleges that Acacia and Basics, which, he alleges, may both be sublessors with regard to his current apartment at 1412 College Avenue, are "responsible for the actions that led to [his] illegal lockout" from that apartment. (*Id.*) He states that Griffiths, the Acacia Program Director of its "PMP" program, has "administrative oversight and operational management of housing programs that directly impact [him]." (*Id.*) Plaintiff asserts that Douglas, Acacia's Quality Assurance Director of Supportive Housing, "played a direct role in the misrepresentations to law enforcement that led to Plaintiff's false arrest and wrongful hospitalization." (*Id.* at 3.) He also asserts that Crow and Staten are social workers that are "under the jurisdiction of . . . Douglas [and] who [both] had [him] arrested for entering [his] apartment." (*Id.*) According to Plaintiff, NYSOMH, via its New York City Field Office, "oversees mental health services within New York City, including those that directly affect [him]. This entity is involved [in this action] due to its oversight role and the implications of its actions and inactions on Plaintiff's housing and mental health support." (*Id.*) Plaintiff alleges that Ben-Atar, NYSOMH's Deputy Director of Housing, "is responsible for the administrative oversight of housing programs that are intended to provide support to individuals with mental health issues, including [him]." (*Id.*) He also alleges that APS "is involved in this case due to

actions taken by its staff that adversely impacted [him]. These actions include the involvement in the events leading to and following [his] wrongful arrest and hospitalization." (*Id.*) Plaintiff further alleges that Glenoy, an APS Senior Supervisor, "is implicated in this case due to his direct or indirect involvement in the decisions and actions taken by APS that affected [him]." (*Id.*) Plaintiff states that 1212 Grant Realty LLC, the owner of his former apartment at 1212 Grant Avenue, and "1412 COL LLC," the owner of his current apartment at 1412 College Avenue, both "may have responsibilities concerning the management and maintenance of the[ir] [respective] propert[ies]. [They are] included [in this action] due to [their] role in the eviction process and the alleged illegal actions taken against [him]." (*Id.* at 4.)

Plaintiff alleges that his "severe mental and physical health conditions substantially limit major life activities, qualifying him as disabled under relevant federal laws. [His] conditions require stable housing and specific accommodations to prevent severe mental health crises." (*Id.*) Plaintiff also alleges that, on November 16, 2023, Griffiths, "with the assistance of BASIC[S] . . . employees[,] physically assaulted and attacked [P]laintiff while Plaintiff[] was trying to pay his monthly rent and provide [a] budget letter[,] which [caused] Plaintiff [to be] [h]ospitalized." (*Id.*) He also alleges that the November 16, 2023 incident was reported to Glenoy, "who is assigned to protect . . . [him] from neglect and abuse as a person who suffers from impairment." (*Id.*)

Plaintiff alleges that, on February 20, 2024, Crow, Staten, Basics, and Acacia, with the assistance of the 1212 Grant Avenue Superintendent, illegally changed the locks on Plaintiff's former apartment at 1212 Grant Avenue. (*Id.* at 4-5, 7.) He also alleges that Acacia, Douglas, and APS caseworker "Ms. Williams" "[n]ever provided [him] with [k]eys on January 3, 2024, during the [l]ease signing [for his] . . . [n]ew [a]partment [at] 1412 College Avenue." (*Id.* at 5.) Plaintiff

states that he made several complaints to APS, specifically, to Glenoy, which were "neglected and ignored[,] in violation of [a] relocation agreement." (*Id.*) Since January 3, 2024, Acacia and 1412 College Avenue, LLC have "refus[ed] to collect [his] rent payments[,] . . . [thus, he has been] partially evicted from . . . 1412 College Avenue."[3] (*Id.*)

Plaintiff seems to state that, on February 20, 2024, Crow, Staten, Basics, and Acacia "misled law enforcement officers from the [New York City Police Department's] 44th Precinct into arresting Plaintiff for trespassing, breaking and entering, and assault. These charges were predicated on fraudulent claims and a profound misunderstanding or deliberate misrepresentation of Plaintiff's legal right to occupy his apartment."[4] (*Id.* at 5; *see id.* at 7.) He also states that this "false arrest led to [his] wrongful hospitalization in a psychiatric unit, exacerbating his mental health condition and resulting in severe emotional distress." (*Id.* at 6.) "During the wrongful hospitalization, [his] apartment was entered without his consent, and personal belongings, including $20,000, were stolen." (*Id.*) Plaintiff alleges that the NYSOMH and Ben-Atar failed "to oversee and regulate the actions of their funded agencies adequately[] [and] neglected their duties to ensure that [he] received the necessary accommodations for his disabilities. This oversight failure led directly to the violations experienced by Plaintiff." (*Id.*) He further alleges that "[t]he collective actions of [the] [d]efendants not only breached specific statutes[,] but also represented a systemic failure to protect and uphold the civil rights of a disabled individual,

---

[3] Plaintiff also alleges that his current apartment at 1412 College Avenue has bedbugs and has no electricity in its living room. (ECF 5, at 5.)

[4] Plaintiff alleges that, upon the changing of the locks at his former apartment at 1212 Grant Avenue on February 20, 2024, Crow, Staten, Basics, and Acacia "falsely represented Plaintiff's legal and tenancy status to law enforcement officials, leading to his wrongful arrest and eviction." (ECF 5, at 7.) Plaintiff, however, does not specify whether he was arrested with regard to his tenancy status as to his former apartment, at 1212 Grant Avenue, or as to his current apartment, at 1412 College Avenue.

directly leading to [his] unlawful eviction, false imprisonment, and emotional and physical harm to [him]." (*Id.*)

## DISCUSSION

The Court construes Plaintiff's amended complaint as asserting claims of disability discrimination under the FHA, the Rehabilitation Act, and Title II of the ADA, claims of federal constitutional violations under 42 U.S.C. § 1983, as well as claims under state law.

**A.    Possible overlap with Plaintiff's claims in *Avila I* and/or in *Avila II***

The Court understands that Plaintiff, in his amended complaint in this action, is asserting claims against Acacia, Douglas, Griffiths, and/or 1212 Grant Realty LLC that he is also asserting in *Avila I* and/or in *Avila II*, his previously filed actions that are also pending in this court. Accordingly, for the reasons discussed in the Court's April 15, 2024 order, the Court dismisses, without prejudice, any claims in this action against Acacia, Douglas, Griffiths, and 1212 Grant Realty LLC that he is also asserting in *Avila I* and/or in *Avila II.* (*See* ECF 4, at 7.)

**B.    Claims of disability discrimination under the FHA against Acacia, Basics, Griffiths, Douglas, Crow, Staten, 1212 Grant Realty LLC, and 1412 COL LLC**

While the Court assumes that Plaintiff has a disability for the purposes of his claims under the FHA, it must dismiss what appear to be his claims of disparate-treatment disability discrimination under that statute against Acacia, Basics, Griffiths, Douglas, Crow, Staten, 1212 Grant Realty LLC, and 1412 COL LLC. The Court refers to the pleading standard for such claims, which the Court articulated in its April 15, 2024 order. (*See* ECF 4, at 7-9.) The Court dismisses these types of claims for the same reasons it did in that order – because Plaintiff "alleges no facts . . . showing that his disability was at least a motivating factor" (*id.* at 9) for the conduct underlying his claims  of discrimination under the FHA against Acacia, Basics, Griffiths, Douglas, Crow, Staten, 1212 Grant Realty LLC, and 1412 COL LLC. Plaintiff's

allegations are, at best, conclusory and, therefore, do not suffice to state viable claims of disparate-treatment disability discrimination under the FHA. *See Palmer v. Fannie Mae*, 755 F. App'x 43, 46 (2d Cir. 2018) (summary order) (holding, in the FHA context, that the plaintiff had "failed to provide facts that could plausibly support even a minimal inference of discriminatory motivation. [Her] complaint merely raises conclusory allegations that Fannie Mae 'discriminated against [her], a pregnant woman,' but fails to offer any facts to support such allegations."). The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.    Claims of disability discrimination under the Rehabilitation Act against Acacia, Basics, the NYSOMH, APS, 1212 Grant Realty LLC, and 1412 COL LLC**

The Court also assumes that Plaintiff has a disability for the purposes of his claims of disability discrimination under the Rehabilitation Act against Acacia, Basics, the NYSOMH, APS,[5] 1212 Grant Realty LLC, and 1412 COL LLC. Yet, the Court must still dismiss these claims. The Court refers to the pleading standing for these claims as set out in its April 15, 2024 order. (ECF 4, at 11-13.) Plaintiff specifically alleges, in his amended complaint, that Acacia and Basics receive federal funding (ECF 5, at 2), which is one of the pleading requirements for these types of claims (ECF 4, at 12). He does not specify, however, whether the NYSOMH, APS (the City of New York), 1212 Grant Realty LLC, and 1412 COL LLC receive federal funding. (ECF 5, at 3-4.)

More importantly, however, even if all of these defendants do receive federal funding, Plaintiff's allegations in his amended complaint, as in his original complaint, "are insufficient to show that any of th[e]se defendants denied him the opportunity to participate in or benefit from

---

[5] For the reasons articulated in the Court's April 15, 2024 order, the Court construes Plaintiff's claims against APS as brought against the City of New York. (*See* ECF 4, at 12 n.11.)

its services, programs, or activities, or has otherwise discriminated against him, by reason of his disability." (ECF 4, at 12-13.) Again, Plaintiff allegations, in his amended complaint, are conclusory and without factual support, and therefore do not satisfy the pleading requirements to state a claim of disability discrimination under the Rehabilitation Act. *See, e.g.*, *Vasquez v. Reece Sch.*, No. 22-CV-5986 (GHW) (JW), 2024 WL 497435, at *9 (S.D.N.Y. Jan. 24, 2024) ("Plaintiffs allege only in a conclusory fashion that 'Defendant excluded J.V. from participation in, and denied J.V. the benefits of, services, programs, and activities . . . because of J.V.'s disabilities.' This is insufficient to state a claim [of disability discrimination under the Rehabilitation Act] under Federal Rule of Civil Procedure 12(b)(6)." (citation omitted)), *report & recommendation adopted*, 2024 WL 497433 (S.D.N.Y. Feb. 8, 2024); *Suarez v. Annucci*, No. 20-CV-7133 (VB), 2021 WL 6065765, at *11 (S.D.N.Y. Dec. 21, 2021) (noting, in the context of claims of discrimination under the Rehabilitation Act, that the "plaintiff merely alleges in conclusory fashion that defendants discriminated against him 'on the basis of his disability,'" and holding that "[s]uch a threadbare recital of a cause of action is insufficient to withstand a motion to dismiss [for failure to state a claim]" (citation omitted)). Accordingly, the Court also dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**D.    Claims of disability discrimination under Title II of the ADA against the NYSOMH and the City of New York**

The Court must further dismiss Plaintiff's claims under Title II of the ADA against the NYSOMH and the City of New York. As discussed in the Court's April 15, 2024 order, "Title II of the ADA forbids discrimination against persons with disabilities in, among other areas of public life, public services, programs, and activities" by a public entity, such as a state or local government agency. (ECF 4, at 14; *see id.* at 14 n.13.) Again, the Court assumes, for the purposes of Plaintiff's claims of disability discrimination under Title II of the ADA, that Plaintiff

has a disability. The Court notes, as it did in its April 15, 2024 order, that "[t]he [pleading]
standard to state a claim of discrimination under Title II of the ADA is the same as the standard
to state a claim of discrimination under the Rehabilitation Act, though without the additional
requirement that the defendant must . . . receive federal funding." (*Id.* at 15.) The Court,
however, dismisses the claims of disability discrimination against the NYSOMH and the City of
New York that Plaintiff asserts in his amended complaint for the same reasons that it dismissed
his claims in his original complaint – because the conclusory allegations in Plaintiff's amended
complaint lack factual support to state a claim of disability discrimination against these
defendants under Title II of the ADA. *See, e.g.*, *Murray v. Lakeland Cent. Sch. Dist. Bd. of
Educ.*, No. 16-CV-6795 (KMK), 2017 WL 4286658, at *9 (S.D.N.Y. Sept. 26, 2017)
("Plaintiff's allegations again amount to nothing more than conclusory statements of
discrimination, which are insufficient to state a claim [of discrimination under Title II of the
ADA]."); *Woodhouse v. City of Mount Vernon*, Nos. 1:13-CV-0189 (ALC) (HBP), 1:13-CV-
1165 (ALC) (HBP), 2016 WL 354896, at *13 (S.D.N.Y. Jan. 27, 2016) (granting a motion to
dismiss for failure to state claims of disability discrimination under the Rehabilitation Act and
Title II of the ADA, and noting that the "complaint includes a single passing reference, alleging,
'defendants violated [the ADA and the Rehabilitation Act].' This is the very definition of a
conclusory allegation."); *see also Lewis v. S. Conn. State Univ.*, No. 3:19-CV-0011, 2020 WL
3619546, at *4 (D. Conn. July 20, 2020) ("[T]he plaintiff has failed to allege a causal connection
between his disability and the defendants' actions. The complaint does not suggest that the
defendants made any statements or engaged in any conduct reflecting animus towards people
with disabilities. The complaint does not allege that the plaintiff received different treatment or
consideration than non-disabled applicants because of his disability. . . .[His] allegations are

13

insufficient to state a plausible claim for relief under Title II [of the ADA].”), *appeal dismissed*, No. 20-2626, 2020 WL 8458962 (2d Cir. Dec. 17, 2020) (unpublished opinion). The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## E.    Claims under 42 U.S.C. § 1983 and under state law against the NYSOMH and Ben-Atar in her official capacity

The Court must dismiss Plaintiff's claims of federal constitutional violations under 42 U.S.C. § 1983 and under state law against the NYSOMH and against Ben-Atar, an NYSOMH official, in her official capacity. “[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity. . . .” *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). “[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.” *Id*. (internal quotation marks and citation omitted). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Congress has not abrogated the States' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

The Eleventh Amendment therefore precludes Plaintiff's claims for damages against the NYSOMH, which is a state agency and an arm of the State of New York. *See Iwelu v. N.Y.S. Off. of Mental Health*, No. 22-3096, 2024 WL 2175938, at *2 n.4 (2d Cir. May 15, 2024) (summary

order); *Nieves v. N.Y.S. Off. of Mental Health*, No. 20-CV-9502 (GHW), 2021 WL 982297, at *2

(S.D.N.Y. Mar. 16, 2021); *DeLeon v. Sergio*, No. 18-CV-11821 (LLS), 2019 WL 2409681, at *2

(S.D.N.Y. June 3, 2019). The Eleventh Amendment also precludes Plaintiff's claims under

Section 1983 for damages against Ben-Atar, in her official capacity as a NYSOMH official. *See,*

*e.g.*, *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) ("[T]he Eleventh

Amendment bars the award of money damages against state officials in their official

capacities."); *Miller v. Carpinello*, No. 06-CV-12940 (LAP), 2007 WL 4207282, at *2 (S.D.N.Y.

Nov. 20, 2007) ("All of the individual State Defendants are employees of [NYS]OMH, and

plaintiff sues them in their official and individual capacities. As part of the relief sought, plaintiff

demands compensatory and punitive damages. Based on Eleventh Amendment immunity, all

claims for compensatory and punitive damages against the individual State Defendants in their

official capacities are dismissed." (citations omitted)). The Eleventh Amendment further

precludes Plaintiff's claims under Section 1983 against the NYSOMH and against Ben-Atar, in

her official capacity, for injunctive relief and retrospective declaratory relief.[6] *See Green*, 474

U.S. at 72-74; *Halderman*, 465 U.S. at 101-02.

---

[6] Under the exception to Eleventh Amendment immunity articulated in *Ex Parte Young*, 209 U.S. 123 (1908), "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citations omitted). Plaintiff's requests for declaratory relief against Ben-Atar are retrospective (ECF 5, at 16), and thus, such claims for relief under Section 1983 against the NYSOMH and against Ben-Atar, in her official capacity, are precluded by the Eleventh Amendment. To the extent that Plaintiff seeks prospective injunctive relief under Section 1983 against the NYSOMH and against Ben-Atar, in her official capacity, specifically, an order from this Court directing those defendants "to relocate Plaintiff from Acacia . . . to a different Housing agency that [provides a] safe and habitable . . . apartment, or provide[s] equivalent housing that meets Plaintiff['s] medical needs as a disabled individual" (*id.* at 17), the Court must dismiss such claims. This is because "[t]here is no right under the United States Constitution to housing benefits or to assistance with obtaining housing." *Lee v. N.Y.C.H.A. N.Y.C. Hous. Auth.*, No.

The Eleventh Amendment additionally precludes Plaintiff from seeking here, in federal court, injunctive or declaratory relief against the NYSOMH or against Ben-Atar, in her official capacity, under state law. *See Halderman*, 465 U.S. at 106; *Li v. Lorenzo*, 712 F. App'x 21, 23-24 (2d Cir. 2017) (summary order). Moreover, this Court lacks subject matter jurisdiction to consider Plaintiff's claims for damages against the NYSOMH, and against Ben-Atar, in her official capacity, under state law; Plaintiff may only pursue such claims for damages in the New York Court of Claims. *Bertoldi v. State*, 275 A.D.2d 227, 228 (1st Dep't 2000) ("It is well settled that the [New York] Court of Claims has exclusive jurisdiction over actions for money damages against the State [of New York], [New York] State agencies, or [New York] State officials acting in their official capacities in the exercise of governmental functions.").

Accordingly, the Court dismisses Plaintiff's claims of federal constitutional violations under Section 1983 and under state law against the NYSOMH, ultimately, for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction."); *Atl. Healthcare Benefits Tr. v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction."); *see* 28 U.S.C. § 1915(e)(2)(B)(iii). The Court does the same with regard to Plaintiff's claims under Section 1983 and under state law against Ben-Atar, in her official capacity, with the exception of those claims for prospective injunctive relief under *Ex Parte Young*, which the Court dismisses for failure to state a claim upon which relief may be granted. *See supra* at 15 n.6.

---

1:23-CV-11322 (LTS), 2024 WL 455203, at *2 (S.D.N.Y. Feb. 5, 2024) (citing and quoting *Lindsey v. Normet*, 405 U.S. 56, 74 (1972)). The Court therefore dismisses such claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**F.      Claims under Section 1983 against APS, the City of New York, and against Glenoy in his official capacity**

The Court further dismisses Plaintiff's claims under Section 1983 against APS and against Glenoy, in his official capacity as an APS Senior Supervisor. With respect to all of Plaintiff's claims against APS, which is an agency of the City of New York, APS is not a separate entity that can be sued. N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Morris v. NYC HRA*, No. 13-CV-1845, 2013 WL 3148664, at *3 (E.D.N.Y. June 19, 2023) (discussing HRA and APS); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses all of Plaintiff's claims against APS for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court understands these claims, and any claims under Section 1983 brought against Glenoy, in his official capacity as an APS official, as brought against the City of New York.[7]

The Court, in its April 15, 2024 order, recounted the pleading standard to state a claim under Section 1983 against a municipality, such as the City of New York, and the Court granted

---

[7] Because Plaintiff's Section 1983 claims regarding APS and/or Glenoy, in his official capacity, are only properly brought against the City of New York, the Court also dismisses, for failure to state a claim, Plaintiff's claims under Section 1983 against Glenoy, in his official capacity, and construes them as also brought against the City of New York, *see* § 1915(e)(2)(B)(ii) *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials . . . [because] local government units can be sued directly for damages and injunctive or declaratory relief."); *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself.").

Plaintiff leave to amend his complaint to allege facts sufficient to state such a claim against that defendant. (ECF 4, at 16-17.) Plaintiff, in his amended complaint, fails to do so because he does not allege facts showing how a policy, custom, or practice of the City of New York caused a violation of federal constitutional rights. (*See id*. at 17.) The Court therefore dismisses Plaintiff's claims under Section 1983 against the City of New York for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

### G.    Claims under Section 1983 against Ben-Atar and Glenoy in their individual capacities

The Court additionally dismisses Plaintiff's claims under Section 1983 against Ban-Atar and Glenoy in their individual capacities. The Court, in its April 15, 2024 order, dismissed Plaintiff's claims under Section 1983 against these defendants because he did not allege facts showing "how either Benatar or Glenoy was directly and personally involved with the alleged violations of his federal constitutional rights," as is required to state a claim under Section 1983 against an individual state-actor defendant. (*See* ECF 4, at 17-18.) The Court, however, granted Plaintiff "leave to amend his complaint to name as defendants those individual state actors who were directly and personally involved in the alleged violations of federal constitutional rights and to allege facts showing how those individuals were each personally and directly involved in those alleged violations." (*Id.* at 18.)

In his amended complaint, Plaintiff alleges facts insufficient to show that Ben-Atar and Glenoy were directly and personally involved in violations of his federal constitutional rights. Any allegations regarding their involvement are conclusory and without factual support, which is insufficient to state such a claim. *See, e.g.*, *Medina v. DuBois*, No. 22-CV-8051 (NSR), 2024 WL 1158456, at *3 (S.D.N.Y. Mar. 18, 2024) ("[T]o plead Section 1983 liability, Plaintiff needs to allege the Defendants were 'present' for the alleged violation or 'participated directly' in or

'somehow permitted' the alleged violation. As they stand, Plaintiff's accusations are conclusory and fail to raise the specter of relief beyond the speculative level." (citations omitted)); *Brown v. Cnty. of Westchester*, No. 22-CV-6146 (PMH), 2024 WL 21937, at *9 (S.D.N.Y. Jan 2, 2024) ("The vague and conclusory allegations that Scarpino aided and abetted unlawful conduct by failing to reprimand Mirza and that Rocah aided and abetted unlawful conduct by failing to discipline Adimari 'without more, are insufficient to allege [Scarpino's and Rocah's] personal involvement under [S]ection 1983." (alterations in original, citation omitted)); *Adams v. Annucci*, No. 17-CV-3794 (KMK), 2023 WL 2664301, at *10 (S.D.N.Y. Mar. 28, 2023) (With respect to claims under Section 1983, "[a] plaintiff cannot merely assert the involvement of high-ranking officials in designations and assignments to sufficiently demonstrate personal involvement."). Even if the Court were to construe Plaintiff's allegations regarding these defendants as asserting that these defendants failed to protect Plaintiff from the other defendants, such assertions would also fail to state a claim because a government official has no general federal constitutional duty to protect an individual from harm. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**H.    Claims under Section 1983 against Acacia, Basics, Griffiths, Douglas, Crow, Staten, 1212 Grant Realty, LLC, and 1412 COL LLC**

Plaintiff's claims under Section 1983 against Acacia, Basics, Griffiths, Douglas, Crow, Staten, 1212 Grant Realty, LLC, and 1412 Col LLC must be dismissed. A claim for relief under Section 1983 must allege facts showing that a defendant acted under the color of a state "statute,

ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires both . . . the exercise of some right or privilege created by the State . . . and the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)). Private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)).

The activity of a private entity may be considered to be state action for the purpose of Section 1983 liability, however, in the following three situations: (1) when the entity acts using the coercive power of the State or is controlled by the State (the "compulsion test"); (2) when the State provides significant encouragement to the entity, the entity willfully participates in joint activity with the State, or the entity's functions are entwined with State policies (the "joint action" or "close nexus" test); or (3) when the State has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted).

The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the State. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In analyzing whether a private entity has acted as a state actor for the purpose of

Section 1983 liability, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Id.* (internal quotation marks and citation omitted). The fact that an entity receives public funds does not turn private action into state action, and acts of private contractors do not become acts of the government because of the contractors' engagement in government contracts. *See Rendell-Baker*, 457 U.S. at 840-41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841. Thus, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Plaintiff has asserted no facts showing that Acacia, Basics, Griffiths, Douglas, Crow, Staten, 1212 Grant Realty, LLC, or 1412 COL LLC, all private entities or individuals, acted as state actors when they allegedly violated Plaintiff's federal constitutional rights.[8] The Court therefore dismisses Plaintiff's claims under Section 1983 against these defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## I.    Remaining claims under state law

The Court understands Plaintiff's claims under state law as brought under the court's supplemental jurisdiction. A federal district court may decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)

---

[8] *See, e.g.*, *Brock v. City of New York*, No. 21-CV-3087 (PGG) (GWG), 2023 WL 3512973, at *4-6 (S.D.N.Y. May 18, 2023) (determining that Acacia is not a state actor), *report & recommendation adopted*, 2023 WL 5217933 (S.D.N.Y. Aug. 14, 2023).

(footnote omitted). Having dismissed Plaintiff's claims of which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction of any of his claims under state law that have not already been dismissed in this order. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**J.    Further leave to amend is denied**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if it would be futile or when the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff has failed to cure the deficiencies mentioned in the Court's April 15, 2024 order, and because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

**CONCLUSION**

The Court dismisses this action for the reasons set forth in this order.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a judgment dismissing this action for the

reasons set forth in this order.

SO ORDERED.

Dated:    August 26, 2024
         New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge